UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KIM HAMILTON COOPER, *et al.*

      Plaintiffs,

v.                                Case No. 8:23-cv-01157-NHA

MAKABE & MAKABE, LLC, , *et al.*

      Defendants.

_____/

## ORDER

Plaintiff Kim Hamilton Cooper sues Defendants Makabe & Makabe, LLC and CBRE, Inc. for negligence. 3d Am. Compl. (Doc. 44). Mr. Cooper alleges he tripped over uneven pavers on a walkway in a retail shopping center owned by Defendant Makabe and managed by Defendant CBRE. *Id.* Mr. Cooper alleges Makabe and CBRE were negligent in allowing the condition to persist and in not failing to warn Mr. Cooper of the condition. *Id.* Additionally, Mr. Cooper's husband, Timothy McCausland, sues Defendants for loss of spousal consortium resulting from Mr. Cooper's injuries. *Id.*

Makabe moves for summary judgment, alleging that the uneven pavers were an open and obvious condition—relieving any duty to warn—and were not inherently dangerous—meaning they did not violate Defendants' duty to maintain the premises in a reasonably safe condition. Doc. 89. Having

reviewed the motion (Doc. 89), Mr. Cooper's response (Doc. 92), and the record before the Court, I find that genuine issues of fact preclude summary judgment in Makabe's favor. Makabe's motion for summary judgment (Doc. 89) is denied.

## I.    Factual Background

Tyrone Corners is an outdoor retail center located at 2500 66th Street in St. Petersburg, Florida. 3d Am. Compl. (Doc. 44) at ¶¶ 6–8; Doc. 89 at p. 1; Cooper Depo., Doc. 92-3, at 40:15–18. Makabe owns Tyrone Corners, and CBRE manages the property. Trujillo Depo., Doc. 92-7 at 16:21–23 and pp. 85–110 (management contract). One of the walkways at Tyrone Corners is made of brick pavers. Doc. 89 at p. 2; Doc. 89-3; Trujillo Depo., Doc. 92-7 at 60:13–20 (calling this walkway a "courtyard").

Mr. Cooper had visited Tyrone Corners four or five times before August 29, 2022, and had specifically walked over the area with brick pavers "maybe once." Cooper Depo., Doc. 92-3, at 41:5–10. On August 29, 2022, Mr. Cooper and his husband, Mr. McCausland, went to the AT&T store at Tyrone Corners to replace Mr. Cooper's cell phone. Cooper Depo., Doc. 92-3, at 40:19–25. Mr. Cooper and Mr. McCausland walked through the brick paver courtyard to return to their vehicle after they left AT&T; there, Mr. Cooper tripped and fell. Cooper Depo., Doc. 92-3, at 44:6–12.

The parties agree that, when Mr. Cooper fell, some brick pavers on the walkway were raised, making the pathway uneven. Doc. 89 at p. 3; Doc. 92 at

pp. 2–3; Doc. 89-3; Doc. 89-4; Trujillo Depo., Doc. 92-7 at 49:25–50:12 (explaining that certain pavers were raised by tree roots). Testimony from James Ebb Green, Jr., the security guard assigned to Tyrone Corners in August 2022, and Sheila Miller, a woman who worked nearby and spent her work breaks on a bench overlooking the brick paver walkway, confirm that some of the brick pavers were "sticking up." Miller Depo., Doc. 92-5 at 10:4–25, 11:16–18; Green Jr. Depo, Doc. 92-6 at 15:9–17.

The parties dispute whether the uneven pavers were open and obvious, such that ordinary people could reasonably perceive and avoid them. On one hand, Makabe argues that the uneven brick pavers were not concealed and were so open and obvious that anyone using his ordinary senses could avoid injuring himself. Doc. 89 at p. 9. In support, Makabe points to Mr. Cooper's testimony that he was looking forward, and not down, prior to his fall, suggesting that, had he been looking at the ground, he would not have fallen. *Id.* at 3 (citing Cooper Depo., Doc. 92-3, at 75:18–24). On the other hand, Mr. Cooper argues that the uneven brick pavers were a concealed danger. In support of his position Mr. Cooper offers (1) Mr. Green's testimony that he had seen people trip in the area before and that he too had almost tripped there (Green Jr. Depo, Doc. 92-6 at 15:9–25), (2) Ms. Miller's testimony that she had seen others trip over uneven pavers in that area before and that, when she saw people walking in the area, she often warned them to be careful of the uneven

ground (Miller Depo., Doc. 92-5 at 16:20–25, 17:13–20), (3) testimony from a CBRE employee assigned to manage the Tyrone Corners property that she would certainly "further investigate" and potentially "put a cone out" if she saw pavers in a walkway in the condition of those Mr. Cooper tripped over (Trujillo Depo, Doc. 92-7 at 61:25–62:5, 62:17–62:23), and (4) Mr. Cooper's expert's opinion that "The dark colors of the pavers and the shade provided by the trees exacerbated the irregular walking surface hazard by reducing the visual contrast at elevation differences which would aid pedestrians using the area in noting and avoiding the hazard" (Doc. 92-4 at p. 6).[1]

## II.    Standard of Review

Summary judgment is appropriate when the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it may "affect the outcome of the suit under the governing law." *Id.* The moving party bears the burden of showing "that there

---

[1] I note Makabe makes no argument regarding, and so the Court does not address, whether Makabe knew about the issue, or whether Makabe—as opposed to CBRE—was required to maintain the premises or warn invitees.

is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

However, once the moving party has discharged its burden, "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quotation omitted). The nonmoving party may not rely solely on "conclusory allegations without specific supporting facts . . . ." *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985). Nevertheless, "[i]f there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor." *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1314 (11th Cir. 2007) (citation omitted). "If one or more of the essential elements is in doubt, then summary judgment must not be granted." *Tippens v. Celotex Corp.*, 805 F.2d 949, 952 (11th Cir. 1986).

## III.    Analysis

To establish negligence, a plaintiff must prove the defendant owed him a duty, the defendant breached that duty, and the breach proximately caused the plaintiff's injury. *Lisanti v. City of Port Richey*, 787 So. 2d 36, 37 (Fla. 2d DCA 2001). A defendant can prevail by disproving any one of those elements. And, even if a plaintiff can prove each of these elements, a defendant can

prevail if the defendant establishes an affirmative defense. *See Harris v. Shelby Cnty. Bd. of Educ.*, 99 F.3d 1078 (11th Cir. 1996) (holding that, despite plaintiff establishing a prima facie case, a defendant who establishes an affirmative defense is entitled to summary judgment).

Here, Makabe moves for summary judgment, arguing that the uneven pavers over which Mr. Cooper alleges he tripped "represent the type of commonplace and ordinarily innocuous changes in elevation that Florida Courts have determined do not give rise to liability as dangerous conditions." Doc. 89 at p. 8.

A.    A Landowner's Duties of Care

In actions involving premises liability, "the duty of care owed by the landowner varies according to the visitor's status." *Barrio v. City of Miami Beach*, 698 So. 2d 1241, 1243 (Fla. 3d DCA 1997) (citation omitted). A "business invitee is one who is 'invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land.'" *Moultrie v. Consol. Stores Int'l Corp.*, 764 So. 2d 637, 639 (Fla. 1st DCA 2000) (quoting *Community Christian Center Ministries, Inc. v. Plante,* 719 So.2d 368, 370 (Fla. 4th DCA 1998) (citation omitted)).

Mr. Cooper was a business invitee when he entered Makabe's property to purchase a cell phone offered by Makabe's tenant, AT&T. Cooper Depo., Doc.

92-3 at 40:22–25.; *see also Fisher v. United States*, 995 F.3d 1266, 1270 (11th Cir. 2021) (a customer is a business invitee under Florida law).

A property owner owes two separate and distinct duties to invitees: First, it must "use ordinary care to maintain its premises in a reasonably safe condition," and, second, it must "warn of concealed dangers which are or should be known to the owner and which are unknown to the invitee and cannot be discovered through the exercise of due care." *Brookie v. Winn-Dixie Stores, Inc.*, 213 So. 3d 1129, 1131 (Fla. 1st DCA 2017) (quoting *Rocamonde v. Marshalls of Ma, Inc.*, 56 So. 3d 863, 865 (Fla. 3d DCA 2011)).

"[W]hile many decisions speak of the duty to warn and the duty to maintain premises in a reasonably safe condition as separate and distinct duties, for analytical purposes the duties are not mutually exclusive, as the open and obvious nature of a condition may preclude a finding of a breach of either duty, as a matter of law." *Brookie*, 213 So. 3d at 1133.

First, a landowner is not required to give an invitee warning of an obvious danger, and is entitled to assume an invitee will perceive something obvious. *Moultrie v. Consolidated Stores International Corp.*, 764 So. 2d 637, 639 (Fla. 1st DCA 2000). Some conditions are "so open and obvious, so common and innocuous, that they can be held as a matter of law not to constitute a hidden dangerous condition." *Gorin v. City of St. Augustine*, 595 So. 2d 1062 (Fla. 5th DCA 1992) (quoting *Circle K Convenience Stores, Inc. v. Ferguson*, 556

So. 2d 1207, 1208 (Fla. 5th DCA 1990)). But when a condition is concealed (that is, not reasonably discoverable by the invitee), and the landowner knows or should know about it, the landowner has a duty to warn of the condition. *TruGreen LandCare, LLC v. LaCapra*, 254 So. 3d 628, 631 (Fla. 5th DCA 2018). That said, the existence of a condition that requires warning does not necessarily constitute a breach of the landowner's duty to maintain the premises, so long as he used the degree of care and prudence of an ordinarily prudent person in keeping the premises in a reasonably safe condition. *See, e.g., Fredrick v. Dolgencorp, LLC*, 304 So. 3d 36, 38 (Fla. 2d DCA 2020).

"[T]here are two types of obvious conditions that will not constitute a breach of a duty to maintain premises in a reasonably safe condition[]: 1) where the condition is . . . 'open and obvious and not inherently dangerous'; **or** 2) where the condition may be dangerous, but is 'so open and obvious that an invitee may be reasonably expected to discover them to protect himself.'" *Brookie*, 213 So. 3d at 1133 (emphasis in original); s*ee also Earley v. Morrison Cafeteria Co. of Orlando,* 61 So.2d 477, 478 (Fla. 1952) (noting a store proprietor "has a right to assume that the invitee will perceive that which would be obvious to him upon the ordinary use of his own senses") (citation omitted). But, "where the danger is of such a nature that the owner should reasonably anticipate that it creates an unreasonable risk of harm to an invitee notwithstanding a warning or the invitee's knowledge of the danger, then

8

reasonable care may require that additional precautions be taken for the safety of the invitee." *Stewart v. Boho, Inc.*, 493 So. 2d 95, 96 (Fla. 4th DCA 1986) (citing *Pittman v. Volusia County,* 380 So.2d 1192, 1194 (Fla. 5th DCA 1980)); *see also Dampier v. Morgan Tire & Auto, LLC*, 82 So.3d 204, 206 (Fla. 5th DCA 2012) ("[Some] conditions are dangerous, but are so open and obvious that an invitee may be reasonably expected to discover them and to protect himself. The rule applied in these circumstances is to absolve the landowner of liability unless the landowner should anticipate or foresee harm from the dangerous condition despite such knowledge or obviousness.") (citations omitted).

Ultimately, whether a condition is so openly and obviously dangerous that a customer can be expected to avoid it (i.e. that the condition does not inherently constitute a breach of duty) depends on the circumstances. *Greene v. Twistee Treat USA, LLC*, 302 So. 3d 481, 483-84 (Fla. 2d DCA 2020) (holding that "the open-and-obvious-condition principle is certainly not a fixed rule, and all of the circumstances must be taken into account") (internal quotation and citation omitted). Likewise, context-dependent is whether the landowner "reasonably should anticipate that the condition poses an unreasonable risk of harm to the invitee notwithstanding the obvious nature of the condition," such that he has "duties to protect or warn invitees." *Id*. at 483–84.

B.    <u>Makabe's Duty to Warn</u>

Florida's intermediate appellate courts have generally found uneven junctures in outdoor pathways to be so common and innocuous that they do not constitute a dangerous condition that gives rise to a duty to warn. *See, e.g., Middleton v. Don Asher & Assocs., Inc.*, 262 So. 3d 870, 872 (Fla. 5th DCA 2019) (in considering a district court's ruling on summary judgment, finding an uneven sidewalk was open and obvious as a matter of law and discharged the landowner's duty to warn); *Lotto v. Point East Two Condominium Corp.*, 702 So. 2d 1361 (Fla. 3d DCA 1997) (affirming the trial court's finding on summary judgment that the homeowner's association did not owe a duty to warn residents of the condition of the sidewalk under the circumstances because the deteriorated condition was obvious); *Circle K Convenience Stores, Inc. v. Ferguson*, 556 So. 2d 1207, 1208 (Fla. 5th DCA 1990) (affirming a directed verdict for a landowner because the uneven juncture between the cement and asphalt in a gas station parking lot was "so common and so ordinarily innocuous" that it was not a dangerous condition). However, uneven outdoor walkways are not inherently, as a matter of law, so open and obvious, so common and innocuous, as to not constitute a hidden dangerous condition.[2]

---

[2] The Florida Supreme Court has held only that an *indoor* difference in floor elevation is not inherently dangerous. *See, e.g., Schoen v. Gilbert*, 436 So. 2d 75, 76 (Fla. 1983) (holding that six-inch drop between foyer and living room

Rather, in *Kersul v. Boca Raton Community Hospital, Inc.*, 711 So. 2d 234 (Fla. 4th DCA 1998), Florida's Fourth District Court of Appeal reversed the trial court's entry of summary judgment for the landowner, recognizing that whether the landowner owned a duty to warn was an issue for trial because the plaintiff had presented evidence that an uneven joint between two sidewalk segments was not open and obvious, and that the landowner was aware of the condition.[3] *Id.* at 234; *see also Johnson v. Circle K Corp.*, 734 So. 2d 536, 536 (Fla. 1st DCA 1999) (reversing summary judgment award to the business owner because a "genuine issue of material fact exists as to whether the alleged

---

was not inherently dangerous condition); *Hoag v. Moeller*, 82 So. 2d 138, 139 (Fla. 1955) (holding that three-and-a-half to four-inch drop between living room and dining room was not dangerous condition); *Bowles v. Elkes Pontiac Co.*, 63 So. 2d 769, 772 (Fla. 1952) (holding that three-inch drop-off between platform and showroom floor was not dangerous condition).

[3] Makabe invites the Court to instead rely on non-binding opinion, *Kelley v. Sun Communities, Inc.*, No. 8:19-CV-1409-T-02AAS, 2021 WL 37595, at *1 (M.D. Fla. Jan. 5, 2021). In that case, a mobile park community resident tripped over an uneven joint in the sidewalk maintained by the property owner. *Id.* The court granted summary judgment to the property owner, finding that the resident had lived there for eight years and walked over the same stretch of sidewalk every day for those eight years, that the sidewalk joint was not concealed but was obvious to those walking, including the resident who admitted that he was aware of it, and that the sidewalk was not "dilapidated or deteriorated" but, instead was "pristine" other than the single uneven seam. *Id.* at *1, *3–*4. But, unlike the plaintiff in *Kelley*, Mr. Cooper has presented evidence that the unevenness of the bricks was concealed, that the paver walkway was in a state of disrepair, and that Mr. Cooper was unfamiliar with the condition of the paver walkway. *See* Sec. I, *supra*. Accordingly, this case is distinguishable from *Kelley*.

dangerous condition[ (a seam between surfaces in the parking lot)] was open and obvious.").

Here, as in *Kersul*, Plaintiff has presented evidence that the uneven pavers were not so open and obvious as to be easily perceived by invitees but, rather, were concealed. First, Plaintiff's expert opined that the "dark colors of the pavers and the shade provided by the trees . . . reduc[ed] the visual contrast at elevation differences which would aid pedestrians using the area in noting and avoiding the hazard." Doc. 92-4 at p. 6. Second, the security guard, Mr. Green, testified that he had seen people trip in the area before and that he had almost tripped there. Green Jr. Depo, Doc. 92-6 at 15:12–17. Third, Ms. Miller, who regularly sat on a bench that overlooked the area, testified that she had seen others trip over uneven pavers in that area before and that, when she saw people walking in the area, she found it necessary to warn them about the uneven bricks. Miller Depo., Doc. 92-5 at 16:20–25, 17:15–20.

Thus, the issue of whether Makabe breached its duty to warn is a question that must be resolved by a jury.

### C.    Makabe's Duty to Maintain the Premises

"When an injured party alleges that the owner or possessor breached the duty to keep the premises in a reasonably safe condition, an issue of fact is generally raised as to whether the condition was dangerous and whether the owner or possessor should have anticipated that the dangerous condition

would cause injury despite the fact it was open and obvious." *Aaron v. Palatka Mall, L.L.C.*, 908 So. 2d 574, 578 (Fla. 5th DCA 2005).  In analyzing whether a danger is open and obvious, the finder of fact is "required to consider all of the facts and circumstances surrounding the accident and the alleged dangerous condition." *TruGreen,* 254 So. 3d at 628 (citation omitted). Whether a landowner's duty to maintain the premises has "been breached is ordinarily a question for the jury to decide." *Hancock v. Dep't of Corr.,* 585 So.2d 1068, 1071 (Fla. 1st DCA 1991) (citation omitted).

For the reasons previously stated, I find Plaintiff has raised an issue of fact as to whether the condition was open and obvious and dangerous. For this reason alone, summary judgment is inappropriate.

Additionally, Florida's appellate courts have held that an uneven, cracked, or otherwise deteriorated sidewalk can constitute a dangerous condition, or can at least raise a factual dispute over whether the landowner breached its duty to maintain the premises, when issues of fact remain over whether the landowners could have expected that visitors would continue to use the sidewalk, encounter the cracked and uneven portions, and suffer harm as a result. *See, e.g., Middleton v. Don Asher & Assocs., Inc.*, 262 So. 3d 870 (Fla. 5th DCA 2019) (concluding the trial court erred in entering summary judgment for the landowner when, in light of evidence that the landowner had been aware of the cracked sidewalk for at least eighteen months, there was a

factual issue as to whether it should have anticipated people would continue to use the sidewalk and be harmed); *Leon v. Pena*, 274 So. 3d 410 (Fla. 4th DCA 2019) (reversing summary judgment on breach of duty to maintain premises when landowner knew about the sidewalk's condition but failed to undertake any repairs); *Lotto v. Point E. Two Condo. Corp., Inc.*, 702 So. 2d 1361 (Fla. 3d DCA 1997) (concluding, after reviewing photographs showing that the sidewalk segment was severely cracked and somewhat uneven and testimony that it had persisted in that state for three years, that "there remains a factual issue whether the association should anticipate that condominium residents would use the sidewalk and proceed to encounter the cracked and uneven concrete, notwithstanding that the condition was obvious, and would be harmed thereby.") Mr. Green testified that the pavers existed in that condition for more than a year. Green Jr. Depo, Doc. 92-6 at 16:13–17:2.

A jury must resolve the issue of whether Makabe breached its duty to maintain its premises.

## IV.  CONCLUSION

Here, Plaintiff has submitted evidence sufficient to allow a reasonable jury to decide in its favor as to whether the uneven pavers constituted a danger so open and obvious that Mr. Cooper should have perceived it and taken care to avoid it. Accordingly, for the reasons described above, it is **ORDERED** that

Defendant's Motion for Summary Judgment, (Doc. 89), is **DENIED**.

**ORDERED** on March 3, 2025.

NATALIE HIRT ADAMS
United States Magistrate Judge